[S. F. No. 4006.   Department One.—January 19, 1907.]

## LILIAN B. HARDY and HARRIET A. PARLIN, Appellants, v. ADA C. MARTIN, Administratrix of Estate of Robert C. Chambers, Deceased, et al., Respondents.

ATTORNEY AND CLIENT — EVIDENCE — PRIVILEGED COMMUNICATIONS. — Communications made by clients to their attorney concerning a material matter of controversy for which he was employed in their behalf during the existence of the relation between them are priviledged and are not admissible against the clients without their consent.

ID.—OBJECT OF STATUTE—PROTECTION OF CLIENT—EXISTENCE OF RELATION.—Subdivision 2 of section 1881 of the Code of Civil Procedure, respecting privileged communications between attorney and client, is intended for the protection of the client, and to encourage him to give to the attorney whom he consults the fullest information concerning the facts upon which he asks the attorney's advice or action; and if the relation existed when the communications were given, the subsequent cessation of the relation does not make the communications admissible.

ID.—ACTION TO SET ASIDE DEED—FRAUD AND UNDUE INFLUENCE—CONFLICTING EVIDENCE—ADMISSION OF LETTERS TO ATTORNEY—MATERIAL ERROR.—In an action to set aside a deed alleged to have been procured from plaintiffs by the fraud and undue influence of an uncle, who had long stood to them in a relation of trust and confidence, and whose promises they relied upon, though he did not intend to keep them, where there was evidence tending to sustain the plaintiffs' action, and counter-evidence in support of the defense, and the judgment was against the plaintiffs, it was material error requiring a reversal of the judgment to admit letters written by plaintiffs to an attorney employed by them, while the relation of attorney and client subsisted, which contained admissions material to the defense.

ID.—IMMATERIAL CIRCUMSTANCES—CESSATION OF RELATION BEFORE DEED—ACTION OF CLIENTS—ATTORNEY AS WITNESS TO AGREEMENT.—The circumstances that the relation of attorney and client was discontinued before the execution of the deed, and that the clients acted independently in the conveyance to their uncle out of their personal regard for him and in reliance on his promises; and that the attorney subsequently became a witness to a written agreement made cotemporaneously with the deed, even if his signature was requested by them, could not tend to make their previous letters to the attorney, written while the relation of attorney and client subsisted, admissible, or to waive their right to object to their introduction in evidence.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Dorn & Dorn & Savage, for Appellants.

Aylett R. Cotton, and L. A. Redman, for Respondents.

SHAW, J.—This is an action to set aside a deed, alleged to have been procured by the fraud and undue influence of the deceased, Robert C. Chambers.

The plaintiffs are the nieces of the deceased wife of Robert C. Chambers.

Their mother died in 1875, when they were small children. In 1884 Chambers was married to their mother's sister, Eudora A. Chambers, and from that time until her death in 1897, and afterwards until their respective marriages, the plaintiffs lived with Robert C. Chambers as members of his household and family. In 1896 Chambers conveyed to his wife the property in dispute. She had made a will in 1884, devising all her property to her said husband in trust for the equal benefit of the two plaintiffs and their grandmother on their mother's side, Mrs. Tolles, which trust, however, was to cease with respect to the plaintiffs when they respectively became eighteen years of age. They arrived at that age several years before the death of Mrs. Chambers, and consequently, upon her death, they each became seized of an undivided one third of her estate in their own right and entirely free from the trust. The charge is that after the death of Mrs. Chambers, and while he was executor of her will, Robert C. Chambers obtained from them a conveyance of their shares in the real estate described in the complaint, consisting of about forty-six acres of land, situate in Butte County in this state, and referred to in the evidence as the Palermo property, and that said conveyance was obtained from them by means of fraud, undue influence and without any consideration. The fraud charged consisted of promises that he would make a will giving them a substantial part of his estate, which was large and valuable, and that he would also during his lifetime give them sums of money for

their use, which promises, it is alleged, he had no intention
of performing. The undue influence alleged arose from the
long residence of the plaintiffs during their tender years as
members of the family of said Chambers, and the mutual
affection and esteem which arose therefrom, whereby they had
learned to trust him and have great confidence in him.

The action was tried by the court, and findings and judg-
ment were given in favor of the defendants. The plaintiffs
appeal from the judgment and also from an order denying
their motion for a new trial.

From the statement used on the motion for a new trial it
appears that after the death of their aunt, Mrs. Chambers, the
plaintiffs had employed an attorney to look after their in-
terests in the estate, and that from that time until the execu-
tion of the deed in controversy, said attorney had advised
them concerning the same, and had been consulted by
them during negotiations leading up to the execution of the
conveyance, and that while these were pending they had each
written to him several letters relating to the matter, con-
taining some admissions in regard to the facts sought to
be established on the trial of the case. Upon the trial the
defendants offered these letters in evidence. Objections were
made on the ground that they were confidential communica-
tions between attorney and client and on that ground inad-
missible. The objections were overruled and the letters ad-
mitted, to which the plaintiffs excepted, and this ruling is
assigned as error.

We are at a loss to perceive on what ground the evidence
was admitted. Subdivision 2 of section 1881 of the Code of
Civil Procedure provides that: "An attorney cannot, without
the consent of his client, be examined as to any communication
made by the client to him, or his advice given thereon in the
course of professional employment." That these letters were
those of the client to an attorney, concerning the very matter
of the controversy for which he was employed in their behalf,
appears from the contents of the letters, beyond question. That
the statements herein contained constituted material evidence
in the cause was also apparent; indeed, it is not disputed.
It seems to have been claimed that the relation of attorney
and client did not exist, or rather that it did not continue
down to the moment of the execution of the deed, and further,

that the advice of the attorney was not taken or given concerning the question of the policy to be pursued by the plaintiffs with regard to the execution or non-execution of the deed. The fact that the relation of attorney and client did not exist at the moment of the execution of the deed, or for a considerable time prior thereto, would not render the communications admissible, if such relations existed at the time they were made. The statutory provision above quoted is intended for the protection of the client and to encourage him to give to the attorney whom he consults the fullest information concerning the facts upon which he asks the attorney's advice or action, and if the relation existed at the time the communications are given, the subsequent cessation of that relation does not make the communication admissible. Nor do the circumstances that, after having made the communications with the view of procuring the advice or assistance of the attorney, the client concluded to act upon his own motion, and did so act without receiving any advice from the attorney, make such communication admissible, and particularly where, as in this case, the attorney merely stated to the plaintiffs that if they were disposed to make the conveyance to their uncle out of their personal regard for him, that was a matter upon which he would not presume to advise them. They still had the right to freely inform the attorney of all the facts affecting their case, with a view to having his direction concerning the law, and to have the protection of the statute to prevent disclosure of the communications made to him.

The case of the *Estate of Wax,* 106 Cal. 347, 348, [39 Pac. 624], is cited, wherein the court says that when a testator requested his attorneys to sign his will as attesting witnesses, "he in effect consented that whenever the will should be offered for probate, they might be called on as witnesses and testify to any facts, within their knowledge, necessary to the establishment of its validity." We do not think this decision has any bearing upon the question in this case. The attorney was not a witness to the deed sought to be set aside, but was an attesting witness to a contemporaneous document stating the terms of the agreement in pursuance of which the deed was executed. It does not appear either from the instrument itself, or from any evidence in the case, who requested the attorney to sign his name as a witness. That, however, we

deem to be immaterial. The reasons advanced in the *Estate of Wax,* 106 Cal. 347, 348, [39 Pac. 624], for the admission of the testimony of an attorney concerning the occurrences attending the execution of a will are that it is necessary to allow the testimony of such witnesses in order to enable the beneficiaries under the will to secure its probate. The decision in that case does not go beyond allowing the attesting witnesses to give their testimony concerning the occurrences at the time of the execution of the will. The letters introduced in the case at bar were not communications made at the time of the execution of the deeds or the instrument to which the attorney had subscribed his name as a witness, but were letters long prior thereto, and contained statements of facts bearing upon the matter, which statements must be regarded as confidential, and it cannot be conceived how the request of the plaintiffs, conceding that they did request the attorney to sign as a witness, could be understood by them, or could be considered by the court, as constituting a waiver of their right to object to the introduction in evidence against them of the previous statements made to him as their attorney. We think the admission of the letters was clearly erroneous.

A judgment would not be reversed for the admission of such testimony if it appeared that the evidence could not have affected the case. It does not appear, however, in this case, that the evidence was so immaterial as to have been harmless. There was evidence directly tending to prove that the deceased had made the alleged promises without intending to perform them, and that the deed was executed in reliance upon those promises, and because of the undue influence possessed by him over them, arising from the relations of confidence and trust existing between them. There was also evidence tending to show that the property in controversy had been conveyed by the deceased to his wife under a naked trust whereby she was to hold the same for his benefit, that this was understood by all the parties, and that the deed in controversy was made for the purpose of terminating this trust. The conflict between these two theories and the question which of the two was correct, was the principal question in the case. The statements in the letters introduced in evidence tended to prove the latter and disprove the former. We think it was material evidence of considerable weight and

that it cannot be said to have been without effect upon the decision. There are other questions in the case which are discussed in the briefs, but as they relate to merely technical matters and may not arise upon another trial we do not think it necessary to consider them.

The judgment and order are reversed.

Angellotti, J., and Sloss, J., concurred.